United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE, | No. C-09-1098 EMC |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, | |
| Defendant. | |
| _____/ | **(Docket Nos. 3, 7)** |

Plaintiff American Small Business League ("ASBL") has filed suit against Defendant the United States Business Administration ("SBA"), alleging a violation of the Freedom of Information Act ("FOIA"). Currently pending before the Court is the SBA's motion to dismiss or, in the alternative, for summary judgment. The SBA argues that the case should be dismissed because ASBL failed to exhaust its administrative remedies prior to filing suit. In the alternative, the agency argues that it is entitled to summary judgment because the search for records that it conducted was reasonably calculated to produce responsive records.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the parties' supplemental briefs, and all other evidence of record, the Court hereby **DENIES** the motion to dismiss but **GRANTS** the alternative motion for summary judgment.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On or about July 3, 2008, ASBL made a FOIA request to the SBA, asking for a copy of "[t]he telephone records for Mr. Michael Stamler, Director of the Small Business Administration Press Office during the years 2006 and 2007 in an electronic format." Compl., Ex. A (letter, dated

7/3/2008, from ASBL to SBA); *see also* Vellucci Decl. ¶ 7 (acknowledging FOIA request by ASBL on or about 7/3/2008).

Subsequently, on or about October 3, 2008, the SBA provided information to ASBL in an electronic format. *See* Compl., Ex. B (letter, dated 10/3/2008, from SBA to ASBL) ("The Agency is . . . providing the requested information on the enclosed diskette in a *Microsoft Excel 2003* file.") (emphasis in original); *see also* Vellucci Decl. ¶ 7 (noting that floppy diskette was provided to ASBL in October 2008). The agency noted that six individual records were being withheld from disclosure pursuant to 5 U.S.C. § 552(b)(6) (providing for exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"). *See* Compl., Ex. B (letter, dated 10/3/2008, from SBA to ASBL); *see also* Vellucci Decl. ¶ 8 (noting that six calls were deemed exempt from disclosure). The agency also noted that ASBL had the right to appeal the agency's decision to the Chief of the Freedom of Information/Privacy Acts Office of the SBA. *See* Compl., Ex. B (letter, dated 10/3/2008, from SBA to ASBL)

Thereafter, ASBL did appeal the agency's decision on the basis that the electronic diskette provided was corrupted. *See* Vellucci Decl., Ex. 2 (letter, dated 11/6/2008, from ASBL to SBA). The SBA provided the information that it had previously supplied a second time, noting once again that ASBL had the right to appeal. *See* Vellucci Decl., Ex. 3 (letter, dated 11/17/2008, from SBA to ASBL).

ASBL was able to review the information this time around but did not believe that the information provided was sufficient. In a letter dated December 24, 2008, it explained:

> The information provided . . . came in the form of a Microsoft Excel workbook . . . and contained a single spreadsheet consisting of 369 rows of data. The data reflected calls from 2005, 2006 and 2007. According to the data provided, Mr. Stamler's telephone records consisted of 31 calls in 2005, 187 calls in 2006, and 151 calls in 2007. It is not believable that Mr. Stamler's phone records for that three-year period would consist of only 369 calls. *It is for this reason that we are appealing your decision and asking that you provide us with the telephone records for Mr. Michael Stamler, Director of the Small Business Administration Press Office during the years 2006 and 2007 in full and in an electronic format.*

Vellucci Decl., Ex. 4 (letter, dated 12/24/2008, from ASBL to SBA) (emphasis added).

2

On or about February 10, 2009, the Chief of the Freedom of Information/Privacy Acts Office of the SBA responded to the appeal. *See* Vellucci Decl., Ex. S (e-mail, dated 2/10/09, from SBA to ASBL). She noted that she had been informed that additional records had been located for the month of January 2007. These records were not provided previously because files had been corrupted and the SBA had been told by its telecommunications provider, Sprint, that replacement copies of the records were not available. However, subsequently, Sprint did provide replacement copies and the agency found twenty-two additional records responsive to ASBL's request. The Chief stated that

> there are no other records of calls made from [Mr. Stamler's] number other than those which have been previously reviewed and now the recently recovered twenty-two from January 2007. Beyond that single month of records, we have no explanation for the variance in call volume for that number during those years.

Vellucci Decl., Ex. 5 (e-mail, dated 2/10/09, from Chief to ASBL). The Chief then stated:

> In order to provide you with the fullest benefit of the FOIA, OCPL [Office of Communications and Public Liaison, *i.e.*, the office where Mr. Stamler worked] will now conduct an initial FOIA review of the twenty-two telephone records and respond directly to you with their disclosure determinations. *Therefore, this office will not conduct an appellate review of the records at this time.*

Vellucci Decl., Ex. 5 (e-mail, dated 2/10/09, from Chief to ASBL) (emphasis added).

Two days later, *i.e.*, on February 12, 2009, the SBA provided ASBL with information consistent with that described by the Chief. *See* Vellucci Decl. ¶ 13. The SBA stated that it had reviewed the information it had provided and found there to be only

> one gap. The subject telephone records for the month of January 2007 could not initially be read from the data on file with SBA, which was provided by its then telecommunications provider, U.S. Sprint Inc. In the interim, SBA contacted U.S. Sprint and has secured a replacement set of records for that month, from which the specific phone record data requested by ASBL has been extracted.

Compl., Ex. D (letter, dated 2/12/09, from SBA to ASBL). There were 22 calls for the month of January 2007. Each of these records was now being provided to ASBL – *i.e.*, there were no exclusions. The agency then noted that "no other records responsive to [ASBL's] request can be

3

identified." Compl., Ex. D (letter, dated 2/12/09, from SBA to ASBL). The agency concluded by noting, once again, that ASBL had the right to appeal.

Subsequently, on March 12, 2009, ASBL filed the instant lawsuit. ASBL alleged that the SBA had violated FOIA by failing to make a full disclosure of records, as requested by ASBL. ASBL alleged:

> It is patently unbelievable that the Director of the SBA's Press Office – whose duties by definition involve communications outside the Agency, made an average of one phone call every three days [*i.e.*, 369 calls over a three-year period]. It is far more likely that the SBA has failed to make a good faith effort to conduct a search for the requested records using methods that can reasonably be expected to produce the information requested.

Compl. ¶ 9.

The SBA has now submitted, in conjunction with this motion, a declaration which addresses why there only 369 calls over a three-year period (not counting the January 2007 records) were identified. As a preliminary matter, the SBA notes that ASBL has mischaracterized the time period. "Plaintiff did not request records for 2005, but rather, only requested records for 2006 and 2007. . . . [T]he records that were voluntarily produced for 2005 were for one month [only], December 2005, and not for the entire year of 2005." Reply at 4 n.1. The SBA goes on to indicate that the number of calls (*i.e.*, 369) is under-representative for two reasons. First, according to the SBA, it could not provide any information about local telephone calls made by Mr. Stamler because the SBA "was billed [by Verizon, the agency's local telephone service provider,] a flat rate for local telephone calls during the period of 2006-2007." Vellucci Decl. ¶ 3(a). Therefore, "the local telephone billing records contain no information regarding individual local calls placed or received by SBA." Vellucci Decl. ¶ 3(a). Second, with respect to long distance telephone calls, for which the agency's provider is Sprint, the data records provide information for outgoing calls only, not incoming, *see* Vellucci Decl. ¶ 4; Forte Decl. ¶ 4; accordingly, not all calls in which Mr. Stamler participated would be documented. The SBA reviewed the data records provided by Sprint for information responsive to ASBL's request. *See* Vellucci Decl. ¶¶ 3(b), 5-7.

In turn, ASBL, in conjunction with its opposition and cross-motion for summary judgment, submitted a declaration as to why the search conducted by the SBA was, as a matter of law, not

reasonable. ASBL notes that SBA used in its search of the Sprint data records only one telephone number for Mr. Stamler – *i.e.*, (202) 205-6919, *see* Vellucci Decl., Ex. 1 (list of calls) – and that there is no evidence that Mr. Stamler used only this one number while acting in his capacity as a SBA employee. Based on ASBL's search of the SBA website, it uncovered at least two additional numbers for Mr. Stamler – *i.e.*, (202) 205-6740 x. 24 and (202) 481-4592. *See* Belshaw Decl. ¶¶ 3-4. The latter number is a fax number. *See* Belshaw Decl. ¶ 4. ASBL also questions whether Mr. Stamler may have used a government-issued cell phone.

In its reply brief, the SBA explains:

- A search of telephone records regarding (202) 205-6740 would not have yielded any responsive records. *See* Kuhns Decl. ¶ 8. That number is the main number for SBA's Office of Communications and Public Liaison. *See* Kuhns Decl. ¶ 7. Mr. Stamler's office telephone is not capable of dialing calls out from that number. *See* Kuhns Decl. ¶ 6. As for incoming calls, calls can reach Mr. Stamler through that number (if his extension, 24, is used or if administrative personnel at the main number transfer calls to his telephone line), *see* Kuhns Decl. ¶ 7, but, as noted above, Sprint's data records for long distance calls provide information for outgoing calls only, not incoming, *see* Vellucci Decl. ¶ 4; Forte Decl. ¶ 4, and "the local telephone billing records contain no information regarding individual local calls placed or received by SBA." Vellucci Decl. ¶ 3(a).

- (202) 481-4592 is a fax number and not a telephone number, and ASBL's FOIA request asked for telephone records. Furthermore, calls to the fax number do not reach a telephone but rather reach a computer system that routes facsimiles to SBA employees' e-mails. *See* Kuhns Decl. ¶ 9.

- Although Mr. Stamler "is assigned an SBA Blackberry device with cellular telephone capability[,] [b]y the time of [ASBL's] FOIA request on July 3, 2008, SBA's records of Blackberry cellular telephone usage no longer included records from 2006 or 2007." Kuhns Decl. ¶ 5.

5

## II.   **DISCUSSION**

A.   Exhaustion

The SBA argues first that the case should be dismissed for failure to exhaust administrative remedies. *See* 5 U.S.C. § 552(a)(6). The SBA does not dispute that ASBL appealed an agency decision on December 24, 2008. According to the SBA, the Chief made a timely decision on that appeal on February 10, 2009 – in effect, remanding ASBL's claim to the SBA so that the agency would have an opportunity to review the January 2007 records to see if there would be additional responsive records. However, ASBL did not wait to see what the agency would do and prematurely filed the instant lawsuit.

In response, ASBL makes two primary arguments. First, it argues that the Chief's decision on its appeal of December 24, 2008, was not timely. The Court does not agree. FOIA provides in relevant part that "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall – . . . (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, ane legal public holiday) after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii). The Chief's decision indicates that she received the appeal on January 12, 2009. *See* Vellucci Decl., Ex. 5 (e-mail, dated 2/10/2009, from Chief to ASBL). Excluding weekends and Martin Luther King day (*i.e.*, January 19, 2009), the Chief had until February 10, 2009, to make a decision on ASBL's appeal. The Chief's decision was made on that very date.

Second, ASBL argues that the Chief's decision was, in effect, not a decision but rather a refusal to conduct an appellate review. This argument is not particularly persuasive. FOIA requires a determination to be made on the appeal, and it appears that the Chief did just that. In essence, she deemed the appeal premature because the SBA still had to review the January 2007 records. Notably, there is case authority indicating that a premature appeal defeats the very purposes of the exhaustion requirement.

In *Hidalgo v. FBI*, 344 F.3d 1256 (D.C. Cir. 2001), the plaintiff sent the FBI a FOIA request on December 13, 1999. *See id.* at 1257. The FBI had twenty days to respond. On December 29, 1999, *i.e.*, before that twenty days expired, the plaintiff appealed claiming incorrectly that the FBI had exceeded the time limit by which to provide a response. *See id.* On January 7, 2000, the FBI

6

timely responded to the FOIA request, stating that the records sought were exempt from disclosure unless the plaintiff could provide certain information. The next day, January 8, the OIP (*i.e.*, the entity designated to take FOIA appeals) responded to the appeal – apparently unaware of the FBI's response a day earlier. According to the OIP, even though FOIA authorized failure to act within the time limits as a denial, the OIP could not act until there had been an initial determination by the FBI. *See id.* Thereafter, the plaintiff filed an action in federal court, challenging the FBI's decision of January 7, 2000. *See id.*

The D.C. Circuit held that "permitting [the plaintiff] to pursue judicial review without benefit of prior OIP consideration would undercut 'the purposes of exhaustion,' namely, "preventing premature interference with agency processes, . . . affording the parties and the courts the benefit of [the agency's] experience and expertise, . . . [or] compiling a record which is adequate for judicial review."'" *Id.* at 1259. Significantly, the court rejected the argument that the plaintiff should have been deemed to have exhausted his administrative remedies based on his appeal of December 29, 1999, which was received by the OIP within 60 days of the FBI's decision of January 7, 2000. The appeal "did not promote the purposes of the exhaustion doctrine. As [the plaintiff] pursued [the appeal] before the FBI acted on his request, the appeal could not and did not place the substance of the FBI's response before the OIP. Thus, the OIP had no opportunity to consider the very issues that [the plaintiff] has raised in court . . . ." *Id.*

*Hidalgo* is distinguishable from the instant case because, here, the Chief did have an opportunity to consider the very issue that the ASBL has now raised in this litigation (*i.e.*, that it is hard to believe that only 369 calls were made during a three-year period). In fact, the Chief effectively addressed that issue, stating that, except for the January 2007 records which were only recently obtained, "we have no explanation for the variance in call volume for that number during those years." Vellucci Decl., Ex. 5 (e-mail, dated 2/10/09, from Chief to ASBL). The only issue remaining was initial review of the newly discovered January, 2007 calls, records of which were eventually disclosed in full. Thus, any appeal to the Chief after the SBA reviewed the January 2007 records would have been futile. *Cf. SAIF Corporation/Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990) (in worker's compensation case, noting that "[t]his court, along with every

other circuit to consider the issue, has held that there is no exhaustion requirement if resort to the agency would be futile"; indicating that there is futility where the agency's position "appears already set" and "it is very likely what its result would have been"). Because of the likely futility of any appeal, the Court **DENIES** the SBA's motion to dismiss for failure to exhaust.

B.  Reasonableness of Search

The SBA's second argument is that, even if there were no exhaustion problem, the search that it conducted was reasonable as a matter of law. As detailed above, the SBA has provided a detailed explanation as to why its search was reasonable. At the hearing on the SBA's motion, ASBL conceded as much, challenging only one issue related to the Blackberry used by Mr. Stamler. According to ASBL, even if the SBA no longer had in its possession any telephone records for the Blackberry used by Mr. Stamler, the SBA could have obtained the records from its carrier, Verizon Wireless. Thus, the issue for the Court is whether or not, under FOIA, the SBA was obligated to obtain from Verizon Wireless the subject telephone records.

FOIA imposes an obligation on an agency only where its records -- *i.e.*, agency records -- are being requested. Two requirements must be satisfied in order for requested materials to qualify as agency records. "First, an agency must 'either create or obtain' the requested materials . . . ."[1] *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989). "Second, the agency must be in control of the requested materials at the time the FOIA request is made. By control [the United States Supreme Court] mean[s] that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145. "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' . . . ." *Id.* at 142 n.3. The Court concludes that, in the instant case, the SBA has satisfied its burden.

In the instant case, it is not disputed that the SBA did not create the Verizon Wireless telephone records. As to whether the SBA ever obtained the records, the agency basically admits that it did so; however, the SBA adds that, at the time that the FOIA request was made, it was no

---

[1] *Berry v. Department of Justice*, 733 F.2d 1343 (9th Cir. 1984), one of the cases cited by ASBL, simply underscores this requirement. *See id.* at 1348 (rejecting "an origination test to decide whether documents are agency records under the FOIA").

8

longer in possession of the records, and it had no obligation to retain the records. *See* Def.'s Supp. Br. at 3.

The SBA is correct that it had no obligation to retain the records under FOIA. *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980) ("The [FOIA] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[T]he fact that responsive documents once existed does not mean that they remain in the [agency's] custody today or that the [agency] had a duty under FOIA to retain the records."); *Piper v. United States Dep't of Justice*, 294 F. Supp. 2d 16, 22 (D.D.C. 2003) ("FOIA does not impose a document retention requirement on government agencies.").

Thus, the only question is whether the SBA was nevertheless obligated to try to obtain the records from Verizon. It is not so obligated under FOIA. The Supreme Court has specifically stated that, "because Congress had not intended to 'obligate agencies to create or retain documents,' an agency should not be 'required to retrieve documents which have escaped its possession, but which it has not endeavored to recover.'" *Tax Analysts*, 492 U.S. at 148 n.10; *see also Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("[T]he FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained.") (emphasis in original).

ASBL, however, still argues to the contrary, citing various appellate and district court opinions. The problem for ASBL is that each of these cases is distinguishable, particularly with respect to the "create or obtain" requirement. In each of these cases, the agency essentially contracted with a third party to make the records; therefore, the records were effectively created by the agency. *See, e.g.*, *Burka v. United States HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996) (noting that, even though third parties had technically created the records, the records were effectively created by the agency based on "the extensive supervision and control exercised by the agency over collection and analysis of the data [which] indicate[d] that these firms acted on behalf of [the agency] in creating the [records]"); *In Defense of Animals v. NIH*, 543 F. Supp. 2d 70, 76-77 (D.D.C. 2008) (indicating that the "create or obtain" prong was satisfied because, *inter alia*, the contract between the agency and the third party required the third party to maintain records associated with the

agency-owned animals); *Na Iwi Na Kapuna O Makapu v. Dalton*, 894 F. Supp. 1397, 1411 (D. Haw. 1995) (holding that the "create or obtain" prong was satisfied because the agency had contracted with a third party to prepare the inventory records). The Court acknowledges that ASBL seems to rely on these cases more for the "control" requirement instead of the "create or obtain" requirement but, as noted above, both of these requirements must be met in order for materials to be considered agency records. ASBL cites no authority requiring a governmental agency to obtain records from an independent third party who was not obligated to create and maintain records on the agency's behalf.

ASBL's final argument that the telephone records at issue are agency records is based on the language used in FOIA itself. FOIA defines the term "record" as follows:

> (A)  any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format; and
>
> (B)  any information described under subparagraph (A) that is maintained for an agency by an entity under Government contract, for the purposes of records management.

5 U.S.C. § 552(f)(2). ASBL focuses on the language in § 552(f)(2)(B) as evidence that the telephone records maintained by Verizon Wireless constitute agency records.

There does not appear to be any dispute that Verizon Wireless is a government contractor. *See* Def.'s Supp. Br. at 1 n.1 ("Defendant has a government contract with Verizon Wireless for Blackberry wireless service."). But § 552(f)(2) on its face requires that the contractor be hired for the purposes of records management. *See also* Pl.'s Supp. Br. at 5 (admitting such; also citing 110 S. Rpt. 59 (2007), which states that "[t]his section clarifies that agency records kept by private contractors licensed by the government to undertake recordkeeping functions remain subject to FOIA just as if those records were maintained by the relevant government agency"). In the instant case, the SBA has hired Verizon Wireless to provide wireless service. Simply because Verizon offers to give its customers, *e.g.*, historical information does not mean that Verizon was hired for purposes of records management.

Because, for the reasons stated above, the undisputed evidence of record demonstrates that the Verizon Wireless telephone records are not agency records, the SBA is entitled to summary judgment on ASBL's FOIA claim.

### III.  CONCLUSION

For the foregoing reasons, the Court denies the SBA's motion to dismiss but grants the SBA's motion for summary judgment and denies ASBL's cross-motion.

This order disposes of Docket Nos. 3 and 7.

IT IS SO ORDERED.

Dated:  July 1, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

11